http://www.va.gov/vetapp16/Files5/1639946.txt

Citation Nr: 1639946 
Decision Date: 09/30/16 Archive Date: 10/13/16

DOCKET NO. 10-37 538 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Houston, Texas

THE ISSUES

1. Entitlement to service connection for a psychiatric disorder, including posttraumatic stress disorder (PTSD), to include as secondary to service-connected bilateral hearing loss and/or tinnitus.

2. Entitlement to service connection for a left shoulder disorder.

REPRESENTATION

Veteran represented by: Disabled American Veterans

ATTORNEY FOR THE BOARD

D.M. Casula, Counsel

INTRODUCTION

The Veteran served on active duty from March 1955 to December 1958. The Veteran had additional service in the Air Force Reserves until February 1963. 

These matters come before the Board of Veterans' Appeals (Board) on appeal from an October 2008 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO). 

In September 2015, the Board remanded this matter for additional development. 

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900 (c). 38 U.S.C.A. § 7107 (a)(2) (West 2014).

This appeal was processed using the Veterans Benefits Management System (VBMS) and the Virtual VA electronic claims file. Virtual VA contains documents that are either duplicative of the evidence in VBMS or not relevant to the issue on appeal.

The issues of entitlement to service connection for a psychiatric disorder other than PTSD and for a left shoulder disorder are addressed in the REMAND portion of the decision below and are REMANDED to the Agency of Original Jurisdiction (AOJ).

FINDING OF FACT

The preponderance of the evidence of record shows that there is no diagnosis of PTSD.

CONCLUSION OF LAW

PTSD, was not incurred in or aggravated by active service, and is not due to, the result of, or aggravated by a service-connected disability. 38 U.S.C.A. §§ 1110, 1131 (West 2014); 38 C.F.R. §§ 3.304, 3.310 (2015). 

REASONS AND BASES FOR FINDING AND CONCLUSION

I. Duty to Notify and Assist

VA has a duty to notify and assist claimants in substantiating claims for VA benefits. See e.g. 38 U.S.C.A. §§ 5103, 5103A (West 2014) and 38 C.F.R. § 3.159 (2015). For the issue decided in the instant document, VA provided adequate notice in a letter sent to the Veteran in March 2008.

The Board also finds VA has satisfied its duty to assist the Veteran in the development of the claim. VA has obtained all identified and available service and post-service treatment records for the Veteran. The Veteran's service treatment records (STRs) are unavailable, and are believed to have been destroyed in a fire in July 1973 at the NPRC facility. In such situations, where STRs are missing, the Board has a heightened obligation to explain its findings and conclusions and carefully consider the benefit-of-the-doubt rule. O'Hare v. Derwinski, 1 Vet. App. 365, 367 (1991). However, the case law does not lower the legal standard for proving a claim for service connection but rather increases the Board's obligation to evaluate and discuss in its decision all of the evidence that may be favorable to the veteran. See Russo v. Brown, 9 Vet. App. 46 (1996). Moreover, there is no presumption, either in favor of the claimant or against VA, arising from missing records. See Cromer v. Nicholson, 19 Vet. App. 215 (2005).

The Veteran underwent a VA examination in May 2016 regarding the PTSD claim. The Board finds this examination adequate because it included a review of the claims folder and a history obtained from the Veteran, and examination findings were reported, along with diagnoses/opinions, which were supported by explanation. See Barr v. Nicholson, 21 Vet. App. 303, 310-11 (2007). It appears that all obtainable evidence identified by the Veteran relative to this claim has been obtained and neither he nor his representative has identified any other pertinent evidence which would need to be obtained for a fair disposition of this appeal. No further notice or assistance is required to fulfill VA's duty to assist in the development of the claim. Smith v. Gober, 14 Vet. App. 227 (2000), aff'd 281 F.3d 1384 (Fed. Cir. 2002).

The Board concludes that VA has satisfied its duty to assist the Veteran in apprising him as to the evidence needed, and in obtaining evidence pertinent to his claim under the VCAA. No useful purpose would be served in remanding this matter for yet more development. Sabonis v. Brown, 6 Vet. App. 426, 430 (1994).

II. Factual Background

As noted above, the Veteran's STRs are unavailable, and are believed to have been destroyed in a fire in July 1973 at the NPRC facility. The Board notes that the Veteran has reported that he did not seek out mental health treatment in the military. 

In support of his claim, the Veteran submitted several lay statements from friends who basically reported that the Veteran had been taking medication for his nerves, including Valium, in the post-service years. 

VA treatment records showed that in April 2004, the Veteran was admitted for inpatient psychiatry consultation, and a history of recurrent depression was noted. He described a depressed mood that had been worsening for the past 8 years. A psychiatric review of systems revealed depression and anxiety, but no mania, psychosis, or PTSD. In December and February 2008, he had a negative PTSD screen, and his diagnoses included depression, history of anxiety, and rule out dysthymic disorder. 

In statements dated in March 2008 and August 2008, the Veteran reported several in-service stressor events that reportedly occurred when he was assigned to the 384th Bombardment Wing at the (then) Little Rock Air Force Base. These stressors primarily involved witnessing plane crashes and people being injured or killed in these crashes. In February 2016, a response was received from an archivist at the Air Force Historical Research Agency regarding the Veteran's reported stressor events, and the archivist concluded that the basis of some of the Veteran's stressors was documented, but not all the facts reported by the Veteran, and that the other stressors had no basis in documented facts and could not be confirmed by the Air Force Historical Research Agency. 

In a May 2016 VA examination, the examiner took a full social, occupational, and education history. He also took a full military service, legal, behavioral, and substance abuse history. The examiner reviewed the Veteran's stressors and delineated all findings as related to the DSM-5. The examiner concluded that based on that day's evaluation, the Veteran did not have a diagnosis of PTSD that conformed to DSM-5 criteria. It was noted that his symptoms did not meet the diagnostic criteria for PTSD under the DSM-5 criteria, but that he had another mental disorder diagnosis of adjustment disorder, unspecified. The examiner noted that the Veteran reported vague depressive and anxiety symptoms related to ongoing psychosocial stressors not specific to his military experiences. The examiner opined that the Veteran's current report of symptoms did not meet the criteria for a diagnosis of PTSD or a trauma-related disorder. 

III. Analysis

Service connection may be granted for a disability resulting from disease or injury incurred in or aggravated by active service. 38 U.S.C.A. §§ 1110, 1131 (West 2014); 38 C.F.R. § 3.303(a) (2015). To establish a right to compensation for a present disability, a Veteran must show: (1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service - the so-called "nexus" requirement. Holton v. Shinseki, 557 F.3d 1362, 1366 (Fed. Cir. 2009) (quoting Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004)). Service connection may be granted for any disease initially diagnosed after discharge when all of the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d) (2015). 

Service connection for PTSD similarly requires (1) medical evidence establishing a diagnosis of the disorder, (2) credible supporting evidence that the claimed in-service stressor occurred, and (3) a link established by medical evidence between current symptoms and an in-service stressor. 38 C.F.R. § 3.304(f). The PTSD diagnosis must be made in accordance with the criteria of Diagnostic and Statistical Manual of Mental Disorders. 38 C.F.R. §§ 3.304(f), 4.125(a). There are several avenues to document an in-service stressor, other than obtaining verification from the JSRRC or other government records repository. In cases of in-service PTSD diagnosis, combat service, or prisoner of war status a Veteran's stressor may be verified by lay evidence. 38 C.F.R. § 3.304 (f)(1), (2), (4). Lay evidence of personal assault requires appropriate corroboration, and a stressor related to a Veteran's fear of hostile military or terrorist activity requires appropriate medical evidence. 38 C.F.R. § 3.304 (f)(3), (5).

The existence of a current disability is the cornerstone of a claim for VA disability compensation. Brammer v. Derwinski, 3 Vet. App. 223, 225 (1992). The Court has held that the presence of a chronic disability at any time during the claim process can justify a grant of service connection, even where the most recent diagnosis is negative. McClain v. Nicholson, 21 Vet. App. 319 (2007).

Lay statements may serve to support a claim for service connection by supporting the occurrence of lay-observable events or the presence of disability or symptoms of disability subject to lay observation. 38 U.S.C.A. § 1153(a); 38 C.F.R. § 3.303(a); Jandreau v. Nicholson, 492 F.3d 1372 (Fed Cir. 2007); Buchanan v. Nicholson, 451 F.3d 1331, 1336 (Fed. Cir. 2006). Although lay persons are competent to provide opinions on some medical issues, some medical issues fall outside the realm of common knowledge of a lay person. Kahana v. Shinseki, 24 Vet.App. 428 (2011). 

The Board finds that the preponderance of the evidence of record demonstrates that there is no PTSD diagnosis. Review of the competent medical evidence of record, which includes VA treatment records and a VA psychiatric examination, shows no report of or diagnosis of PTSD. Rather, the 2016 VA examiner found that there was no PTSD diagnosis. The Board accords this opinion significant probative value as it was based upon a review of the relevant medical records, an interview of the Veteran, and was fully explained. See Prejean v. West, 13 Vet. App. 444, 448-9 (2000) (holding that factors for assessing the probative value of a medical opinion are the physician's access to the claims file and the thoroughness and detail of the opinion); Nieves-Rodriguez v. Peake, 22 Vet. App. 295, 302-04 (2008) (noting that the central issue in determining the probative value of an opinion is whether the examiner was informed of the relevant facts in rendering a medical opinion).

Although the Veteran has stated that he has PTSD that is related to his conceded in-service stressors, the Board finds that his testimony in this regard is not competent. Although he is competent to report psychiatric symptoms and their onset, he is not competent to report whether those particular psychiatric symptoms constitute a particular psychiatric disability. See Washington v. Nicholson, 19 Vet. App. 362, 368 (2005) (noting that a lay witness is competent to report to factual matters of which he or she has first-hand knowledge). Such a differentiation is not capable of lay observation, such as the presence of varicose veins or ringing in the ears; medical expertise is required as it is a complex psychiatric determination. See Jandreau v. Nicholson, 492 F.3d 1372, 1377 n.4 (Fed. Cir. 2007) ("sometimes the layperson will be competent to identify the condition where the condition is simple, for example a broken leg, and sometimes not, for example, a form of cancer").

Based upon the foregoing and the lack of a diagnosis of PTSD, the Board concludes that the Veteran is not entitled to service connection for PTSD. As the preponderance of the evidence is against the claim, the benefit-of-the-doubt rule does not apply, and the claim for service connection for PTSD is denied. 38 U.S.C.A. § 5107 (b); 38 C.F.R. § 3.102.

ORDER

Service connection for PTSD is denied.

REMAND

1. Psychiatric Disorder other than PTSD

The RO has not complied with the instructions from the September 2015 remand. The Board is obligated by law to ensure that the RO complies with its directives. Stegall v. West, 11 Vet. App. 268, 271 (1998). RO compliance with remand directives is not optional or discretionary and the Board errs as a matter of law when it fails to ensure remand compliance. Stegall, 11 Vet. App. at 271. Moreover, where VA provides the veteran with an examination in a service connection claim, the examination must be adequate. Barr v. Nicholson, 21 Vet. App. 303, 311 (2007). In a secondary service connection claim, a medical opinion that a disorder is not the result of an already service-connected disability does not address the issue of aggravation. El-Amin v. Shinseki, 26 Vet. App. 136, 140-41 (2013). 

In the September 2015 remand, the Board directed that an examiner opined whether all non-PTSD psychiatric disorders are related to service and whether the disorders are caused or aggravated by his service-connected hearing loss and tinnitus. The examiner was directed to expressly consider the following evidence of record: 1) the numerous buddy statements regarding the Veteran's psychiatric symptoms post-service; 2) the Veteran's lay statements regarding his lay symptoms after service; and 3) the Veteran's lay statements regarding in-service events. A May 2016 VA examiner opined that it was less likely than not that Veteran's adjustment disorder, unspecified, was caused by his military service, and also opined that it was less likely than not that the adjustment disorder, unspecified, was caused by his serviced-connected bilateral hearing loss and tinnitus. 

The examiner did not provide a support explanation regarding the direct service connection claim and did not address the buddy and lay statements of record. Additionally, the examiner did not address whether the service-connected disabilities aggravated the adjustment disorder. Accordingly, remand is required to obtain an adequate examination that complies with the Board remand directives. 

2. Left Shoulder Disorder

The RO has not complied with the instructions from the September 2015 remand. The Board is obligated by law to ensure that the RO complies with its directives. Stegall, 11 Vet. App. at 271. RO compliance with remand directives is not optional or discretionary and the Board errs as a matter of law when it fails to ensure remand compliance. Stegall, 11 Vet. App. at 271. In the September 2015 remand, the Board directed the RO to obtain clinical hospital records from Ellington Air Force Base and Lackland Air Force Base. Although a request was made to the National Personnel Records Center (NPRC) for clinical records pertaining to the Veteran's left shoulder from March 1955 to December 1955 at Lackland Air Force Base, in the response from NPRC, it was noted that the search was negative and there was "no listing for 1955 Ellington AFB impatient" (sic). In the July 2016 supplemental statement of the case, the AOJ noted that there was a "[n]egative response received from NPRC dated December 18, 2015, regarding treatment reports from Ellington Air Force Base", but made no mention of the Lackland AFB. Thus, a remand is required for clarification of whether the NPRC searched for records from Lackland Air Force Base, and if so, what the results of that search revealed. 

Accordingly, the case is REMANDED for the following action:

1. Contact the appropriate VA Medical Center and obtain and associate with the claims file all outstanding records of treatment. If any requested records are not available, or the search for any such records otherwise yields negative results, that fact must clearly be documented in the claims file. Efforts to obtain these records must continue until it is determined that they do not exist or that further attempts to obtain them would be futile. The non-existence or unavailability of such records must be verified and this should be documented for the record. Required notice must be provided to the Veteran and his or her representative. 

2. Contact the Veteran and afford him the opportunity to identify by name, address and dates of treatment or examination any relevant medical records. Subsequently, and after securing the proper authorizations where necessary, make arrangements to obtain all the records of treatment or examination from all the sources listed by the Veteran which are not already on file. All information obtained must be made part of the file. All attempts to secure this evidence must be documented in the claims file, and if, after making reasonable efforts to obtain named records, they are not able to be secured, provide the required notice and opportunity to respond to the Veteran and his representative.

3. Request clarification from the NPRC as to whether there are clinical records for the Veteran from the hospital at Lackland Air Force base, and if so, associate with the claims file all outstanding records of treatment. If any requested records are not available, or the search for any such records otherwise yields negative results, that fact must clearly be documented in the claims file. Efforts to obtain these records must continue until it is determined that they do not exist or that further attempts to obtain them would be futile. The non-existence or unavailability of such records must be verified and this should be documented for the record. Required notice must be provided to the Veteran and his or her representative.

4. After any additional records are associated with the claims file, obtain an addendum opinion regarding the etiology of the non-PTSD psychiatric disorder from the VA examiner who provided the 2016 opinion. The entire claims file should be made available to and be reviewed by the examiner. An explanation for all opinions expressed must be provided. If an examination is deemed necessary, or the same examiner is not available, one must be obtained.

First, the examiner must provide an opinion whether it is at least as likely as not (50 percent or greater probability) that each diagnosed non-PTSD psychiatric disorder had its onset in, or is otherwise caused by, the Veteran's military service, to include events alleged in the March and August 2008 statements from the Veteran. There are prior diagnoses of major depressive disorder, adjustment disorder, and anxiety; these must be addressed.

Second, the examiner must also provide an opinion whether it is at least as likely as not (50 percent or greater probability) that each diagnosed non-PTSD psychiatric disorder was either caused or aggravated beyond its natural progression by the Veteran's service-connected bilateral hearing loss and tinnitus. 

The examiner must expressly consider the following evidence of record: 1) the numerous buddy statements regarding the Veteran's psychiatric symptoms post-service; 2) the Veteran's lay statements regarding his lay symptoms after service; and 3) the Veteran's lay statements regarding in-service events. 

5. Review the examination report and any response from NPRC to ensure compliance with the directives of this remand. If a report is deficient in any manner, the AOJ must implement corrective procedures. Stegall v. West, 11 Vet. App. 268, 271 (1998).

6. After completing the above action, and any other development as may be indicated by any response received as a consequence of the actions taken in the paragraphs above, the claims must be readjudicated. If the claims remain denied, a supplemental statement of the case must be provided to the Veteran and his representative. After the Veteran and his representative have had an adequate opportunity to respond, the appeal must be returned to the Board for appellate review.

The Veteran has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).

______________________________________________
K. MILLIKAN
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs